Allen, J.
dissented upon all the important points of the case. He said—The first and the main question in the case, is, whether the account rendered by the auctioneers in October 1827, is to be regarded as a stated, account between the parties, so as to throw the onus probando upon the plaintiff ? If it is to be so regarded, then it seems to me a court of equity should not have taken jurisdiction of the case. Where an account is settled, or has been stated and so treated as to give it the effect of a settled account, and a balance is struck, an action of assumpsit would be the proper remedy. The relation existing between the parties of principal and agent, would not of itself, and where the account was stated, give the court jurisdiction. The case of King v. *196 Rossett was a suit by a principal against his agent, and the circumstances much stronger than in the present case (treating the account here as a stated account); but the court held the party had a complete remedy at law, and dismissed the bill. The plaintiff, in the present instance, has not treated this as a stated accomit, which he was bound to surcharge or falsify. The gravamen of his bill is the refusal to render any fair account, under the pretext, fraudulent as he alleged, that Thayer had some interest in the subject: and though some comments are made upon some of the charges, that is done, rather with a view of impeaching the whole account, than of falsifying the particular items. If compelled, then, to regard this as a settled or stated account, the only relief the party could be properly entitled to upon his bill, would be a decree for the balance thereby ascertained, and that could have been much more readily recovered in a court of law.
But, under the circumstances of this case, I cannot regard the account rendered, as such a stated account, as to throw, the burthen of impeaching and falsifying it upon the plaintiff. This was not a transaction between merchant and merchant. The plaintiff placed an assortment of goods in the hands of the defendants as auctioneers to sell: they were to dispose of them, and account for the proceeds. It was a single transaction, and all was to be done by the auctioneers. Where merchants deal with each other,-and accounts current are rendered, the party receiving and not objecting, deprives the other of the opportunity of declining to deal with him, as not advantageous. He has a right to presume from long acquiescence, that his rates and mode of charging are satisfactory, and continues to deal upon that presumption. But I have been unable to find any case not between merchant and merchant, where the mere delivery of an account, unaccompanied with any other circumstance, .except .the silence of the party to whom de *197 livered, gives to the account so delivered the character of a stated account. Where the account has been set-tied between the parties, there is no difficulty; but by the term settled, I understand a transaction in which both were actors, concurred in adjusting the items, and struck the balance. And it will be found, that many of the propositions laid down by the judges, have been in cases of this character. Thus, in Willis v. Jernecan, the defendant relied on a stated account, in bar of the relief asked for. The account had been settled, as he alleged, between him and the plaintiff, and entered in a book that related to the transactions between them merely; the adjustment had occupied a week; the plaintiff, at the time and often afterwards, had declared himself extremely well satisfied; and the facts relied on by the answer were sustained by several witnesses. Upon this state of facts lord Hardwicke remarked, “ There is no absolute necessity that the account should be signed by the parties who have mutual dealings, to make it a stated account. For when there are transactions, suppose between a merchant in England and a merchant abroad, and an account is transmitted; it is not the signing which will make it a stated account, but keeping it by him any length of time, which shall bind him and prevent him from opening the account.” The circumstances of the case clearly established the account as a settled account, provided signing were not essential; and this, the case decided, is not necessary. The fact, that accounts transmitted from merchant to merchant in different countries, and not objected to, placed them in the condition of stated accounts, though from the relative position of the parties they could not be signed, is relied on to shew that it was not the signing Avhich made the account a stated account. Sherman v. Sherman is very briefly reported. The bill Avas filed for an account; but from the statement, it does not appear that any settled or stated account was relied on: the plaintiff’s husband and *198 the defendant had dealings together as merchants; the plaintiff’s husband lived for many years after the dealings had ceased, and after differences and disputes had arisen between them, and acquiesced until his death. The plaintiff was left to seek redress at law: and lord Hutchins observed—“Amongst merchants, it is looked upon as an allowance of an account current, if the merchant receiving it does not object to it by a second or third post.” The remark (judging from the report of the case) was not called for: it was a mere dictum, and, even confined to merchants, I question whether it would be held law at present. In Chappedelaine v. Dechenaux, the account had been settled and signed by the parties, and the bill was filed to surcharge and falsify. In Freeland v. Heron, Lenox & co. the parties were merchants, one residing in Great Britain, the other in America ; accounts were furnished annually for several years, and no objections were made ; the defendant too, after these accounts, wrote a letter to the plaintiffs, promising to pay the balance due. This circumstance was relied on by the court: it said, that these circumstances bring it within the influence of the rule of the chancery court and of merchants, which was, that when one merchant residing in one country sends an account current to a merchant residing in a different country, between whom there are mutual dealings, and the merchant who receives, keeps it two years without objection, it is to be regarded as an account stated, and his silence and acquiescence shall bind him, so far as to cast the onus probandi on him. This case confines the rule to merchants residing in different countries, between whom there are mutual dealings ; and fixes a time, two years, after which it is regarded as an account stated. The rule so guarded is a safe one; but it conflicts with the principle laid down in Sherman v. Sherman, according to which the merchant must object by the second or third post. All these are cases of mutual deal *199 ings, continued upon the faith of no objection being made to the accounts as rendered. It seems to me, they can have but little application to cases between individuals not standing in that relation, or dealing with each other generally. Nor do I conceive that the principle, that an admission may be presumed from the silence of the party, where a right has been asserted in his presence and he fails to contradict it, can be applied to this description of cases. The weight of such evidence always depends on the circumstances attending the transaction : neither party is concluded by it. The evidence, though competent, and under some circumstances entitled to much respect, under others would be entitled to none whatever; and its effect would depend upon many other matters, all of which would be considered by the tribunal charged with the ascertainment of the fact. But if, upon that rule of evidence, we determine that the silence of a party to whom an account is sent, is to be treated as an admission of its correctness, so far at least as to throw upon him the burthen of disproving it, we convert that which is a safe rule of evidence when the weight of it is to be ascertained by all the attending circumstances, into a positive and inflexible rule of law controlling the rights of parties. And if the rule can be sustained on this ground, then its application should be universal. If silence is to be treated as an admission, it applies to all to whom an account is forwarded : and many men against whom unjust accounts have been preferred, and who were silent because they intended to resist payment, would, unexpectedly, find themselves debtors for large amounts. This view is sustained by the cases of Lord Clancarty v. Latouche and Irvine v. Young, cited by the appellee’s counsel. In the first of these cases, the transaction was between Conoly, the plaintiff’s testator, and his hanker: an account had been settled in 1789, dealings continued, twelve different accounts furnished to Conoly in his lifetime, and *200 two to the plaintiff after his death. It did not appear that Conoly ever admitted the account to be correct, or expressed any opinion in relation to it. In 1802, after the twelve accoimts had been rendered, he apprised the defendant of an intention to dispose of some property to raise money, and thanked him for his forbearance. He died in 1803. The court held, that the acquiescence of Conoly did not amount to a settlement of the accounts, though they thought it entitled to considerable weight in the adjustment of them. In Irvine v. Young, the bill averred, that three years before the bankruptcy, the defendant had delivered an account to the bankrupt, but treated it as an unsettled transaction: the answer relied upon the fact, that the account had not been objected to, and should therefore be treated as a settled account. The court decided, that the naked fact of delivery, without evidence of contemporaneous or subsequent conduct, affords no sufficient legal presumption that the account was settled. In each case, the court speaks of a settled account; but where circumstances authorize an account, which both did not concur in settling, to be dealt with and treated as a stated account, the same legal consequences follow. For where the court taires it as a stated account, it establishes it without further evidence, and the onus probandi is thrown on the party who seeks to falsify or surcharge it.
It seems to me, therefore, that we are not warranted by the authorities in treating this as a stated account, from the mere fact that it was rendered, and there being no proof that the plaintiff objected. Neither do the circumstances attending this transaction justify us, in my view, in arriving at such a conclusion. The plaintiff avers, he frequently demanded a settlement; the defendant denies it: the parties lived in the same town, and the plaintiff was. embarrassed. But the defendant, on the 13th October 1827, when he rendered the account relied on, wrote to the plaintiff, that his balance was *201 1758 dollars, if he should not he held liable to Thayer; shewing that, at that time, the rights of the parties were not adjusted; and accounting, perhaps, for the silence of the plaintiff as to the particulars of the account; for his first object no doubt would be to ascertain whether Thayer or himself would be entitled to the funds. The defendant, in the same letter, apprised the plaintiff of his own embarrassments : and that he could pay his creditors but fths of their claims, and that in one and two years upon condition he was not to be sued. There was no very strong motive offered the plaintiff, notwithstanding his embarrassments, to press the matter ; and, certainly, the fact of his embarrassments furnishes no presumption, that he acquiesced in the account, when his debtor proposed such terms of composition to him. But the defendant’s letter of January 1831 is, it seems to me, conclusive upon this pretension. In that letter, which appears to be in reply to one from the plaintiff, he says, he had been for a long time extremely desirous to have their accounts settled, and as soon as the plaintiff should find it convenient to come to an adjustment, he would do all which justice to the rest of his creditors, and his own situation, authorized. It was contended, that by the terms settled and adjusted, the defendant referred to the composition before mentioned. But this would be doing violence to his language. He desired the accounts should be settled; and when they should be adjusted (by which I understand him to mean settled, and the balance struck) he would do all that justice to his creditors and himself would authorize. Words cannot be stronger, to shew that he then considered the accounts open and unsettled; and the implication is strong that he knew the items were controverted. This was immediately before the suit, and long subsequent to the rendering of the account.
Yiewing it, then, as the defendant himself viewed it, as an unsettled account, there is no difficulty as to the *202 jurisdiction; and the burthen of proving his disputed items of credit devolves on the defendant. So considering it, I should concur with the commissioner and the court below, in rejecting such items of charge against the plaintiff as were entirely unsupported by proof.
In regard to the uncollected debts, I should hold the agents responsible for all which they discounted or passed away for their own use. They were not hound to make advances; and though an auctioneer may be authorized to take notes, when he sells on a credit, payable to himself, he is still but a trustee for his principal ; and he should not so treat them as to deprive his principal of his control over them. After he has negotiated the notes, his principal cannot reclaim them; the proceeds go to the bona fide holder. In the meantime, if the' auctioneer becomes insolvent, the loss falls on his principal; who should not be subject to the double risk of the insolvency of the debtor, and of the agent too. When the agent has dealt with the subject for his own benefit, his liability is fixed. He is then the only debtor of the principal, and that relation cannot be changed without the consent of the principal, his creditor. One of the notes, the commissioner states, was endorsed and used for the benefit of Townes fy Webb. That it was discounted, may be fairly presumed from the endorsement ; but whether used for the benefit of Townes Sf Webb, may depend on the question, whether they were in advance to the plaintiff at the time or not. As the case is to go back, I have made no calculation to see how the fact is. As to the other notes, I think the mere endorsement of them by Townes fy Webb, not sufficient to raise the presumption that they were discounted and used for the benefit of the auctioneers ; and unless there should be other evidence on this point, the defendant should be credited with the amount.
On the other points raised in the argument, I concur with the president.
*203 The decree entered hy this court declared—That the court was of opinion, that there was error in the decree of the circuit superior court, in subjecting the appellant, without further evidence, to the loss of the four sale notes (the uncollected debts) in the proceedings mentioned, since it did not satisfactorily appear, that the note of Morton ip co. which was discounted, was used by Townes ip Webb for their own purposes, and since it did not satisfactorily appear, that the other notes were discounted at all, or applied by them to their own use, their mere endorsement thereof not being sufficient to raise that presumption. That the majority of the court was further of opinion, that the account rendered by Townes ip Webb to Birchett in October 1827, and retained until 1831, without any evidence of objection to any item thereof, ought to have been considered and held to be a stated account, subject indeed to be surcharged and falsified by Birchett, but to be taken as true except in so far as it might be disproved by him, the onus probandi, in such cases, being always on the party seeking liberty to surcharge and falsify. That the court was further of opinion, that there was no sound objection to the jurisdiction in this case, or to the omission to revive against Webb’s representative, or to the decree in favour of Robert Birchett the younger, the trustee, who, though a defendant in form, was a plaintiff in fact in the cause, and entitled by the appellee’s consent to receive the avails of the decree. Therefore, the decree was reversed so far as it was above declared erroneous, with costs, and in those respects in which it was declared there was no error, affirmed. And the cause was remanded to the circuit superior court, with instructions to consider the account rendered by Toiones ip Webb to Birchett as a stated account, and as prima fade true, unless satisfactory evidence be adduced that it was objected to by Birchett within a reasonable time after it was presented; and with further instructions to exonerate Townes ip *204 Webb from responsibility for loss of the sale notes, unless further evidence be adduced of their appropriation 0f them to then own purposes, it being the opinion of the whole court, that if such misappropriation should appear, they should be held responsible, but otherwise not.